Kent, Ch. J.
I am of opinion that a deviation from necessity will excuse the assured, in case of an insurance against a particular risk, as well as in the case of a general insurance. This is so understood and settled in the English law,.as appears from the case of Green v. Elmslie, decided before Lord Kenyon at Nisi Prius, (Peake’s N. P. 212.) and especially from the case of Scott v. Thompson (1 Bos. & Pull. New Rep. 181.) in which Sir James Mansfield gave the opinion of the court of C. B. upon this very point. There is not, probably, any exception to be met with to the application of the general principle, that if the vessel deviates from the usual course of the voyage *93 from necessity, and deviates no further than that neeessity requires, the voyage will still be protected by the policy. Objections have been made to the application of this rule to insurances against a particular riskbut 1 think the reason of the rule, and the influence of the above decisions ought to prevail. If so, there is no doubt but that the deviation was indispensable in the present case-. The vessel was compelled to change the order of the places to which she was insured. Being excluded from all the ports in St. Domingo, she was proceeding to the only remaining port mentioned in the policy, when the storm met her, and produced a total loss. The plaintiffs are accordingly entitled to judgment.
Tompkins, J.SpenceR, J.and Thompson, ¿.concurred.
Livingston, L
It will be assumed as a-fact, in determining this case, that the Sukey and Polly might have reached Cope Nichola Mole in safety, if she had not been turned away by a British ship of war ; and as a principle of law, that every departure from the course of a voyage, unless occasioned by a peril insured against, or the apprehension of such a peril, is a deviation. If the plaintiffs intended to rely for breaking up the voyage, on damages sustained previous to this interruption, that shouldhave been made a distinct point with the jury; before whom, however, thei-e was no ground on which such an inference could be raised as the vessel never, reached the Cape, it must ever remain.difficult to ascertain what would have' been her condition, if she had arrived there on the day she was ordered away.
The only important question, then, to be settled, is, whether an insurance against sea-risks, only, covers a loss which happens in that way, after a vessel has been forced from its route by a ship of war ? or, in other words, whether a departure thus produced be a deviation within such policy?
, . , , On this case, which is not without its difficulties, English precedents, if we except a very recent one,* and *94 therefore, not binding, throw no light. The cases cited from Strange and from Bosanquet & Puller, bear no similitude to it. In the one where every risk was covered, it was only decided, that if a crew force a master to go ou{. jjjg C0U1.se> js no deviation. In the other, where the policies were also general, the court thought the voyage performed was substantially the same with the one underwritten, and that it was sufficient, if the representation were true and fair when insurance was made. From neither of these cases then, can any information be derived, as to the operation of a limited policy, where a deviation is the immediate effect of & peril not specifically assumed. The one of Scott and another v. Thompson, is the first case we meet with at all bearing on this question, and here the court of common pleas, instead of meeting and examining the difficulty, cut the knot, by saying, what generally cannot be denied,-that “a deviation necessary “ and unavoidable, does not cancel an insurer's obliga- “ tion.” This is so in ordinary insurances, because comprehending every peril, all accidents which produce deviations must necessarily be embraced by them. On such policies if a- vessel be forced out of its way by enemies, pirates, a storm, or the crew, or go into port to repair damages occasioned by lightning or fire, it is no deviation, because the assurers mdst have borne the .loss, if she had been captured, carried away by the mariners, or perished in a tempest, or by fire or lightning. It would seem, indeed, that the only reason why leaving the course of a voyage can be excused, is its proceeding from some hazard insured against, or from a reasonable apprehension of encountering such peril. Otherwise, within however narrow limits his responsibility may be confined, an insurer will still be answerable, consequentially at least, for every loss, without any regard to its cause. Is it not rather the express contract, as well as fair understanding, in all restricted policies of this nature, that for injuries proceeding directly or indirectly from the enumerated risk *95 alone, and no other, shall an indemnity be asked ? If not, great injustice must frequently arise, or nearly the same premium will be required for a single as for all risks. When dangers of the sea are alone insured against, the principal matter taken into the estimate, in settling the rate of premium, is the ordinary length of the proposed voyage; but a risk, which it was fairly imagined would terminate in less than a month, may be protracted for years, by repeated captures, or other accidents not insured against. The case from Peake's Nisi Priiis is hot in point; it was an insurance against capture, which must necessarily protect a vessel while pursuing a voyage, whether she run aground, encounter tempests, or be dismasted, so long as she continues in the course ofit} because, in the first place, she may be got off, and in the other, proceed under jury-masts. Every one must agree with Lord Kenyon, that where a capture intervenes in this way, it is clearly a loss within such limited policy. It will at once be perceived, that in an insurance against capture alone, the risk must always depend more or less on the state of the winds and weather. Two vessels in performing the same voyage, and at the same time, may Save different weather, and different passages. One may arrive in a month, and the other not in double that time, and yet a capture of the last, although delayed by bad winds and storms, would be a loss within the policy as well as the first. Suppose a vessel insured against capture only, from Albany to New-York, who can doubt if shé grounded on one of the bars in Hudson’s river, and were taken while there waiting for the tide, that the as-surer would be responsible f But suppose she were carried to sea, by the barratrous conduct of the master, and afterwards resuming her course to New-York, were taken.' before her arrival, then it Would bear some analogy to the present case; and we should hardly say, that after such a departure from her track, an underwriter would be answerable without first determining that barratry *96 wag one 0f risks he had assumed. ' My opinion is* that the deviation here being to avoid capture, (which Would have been the consequence of going on, and for which, if it had ensued, the defendants were not answerable) put an end to any liability thereafter, even for misfortunes arising from the sea, and that, therefore, judgment ought to be given for the defendants.
Judgment for the plaintiffs.

 Scott v. Tnompson, Bos. & Pul. 1 vol. New Rep. p. 161.