## BELL *v.* LAMPREY.

The statute of limitations runs against a claim, unless the debtor is both absent from and residing out of the State.

He may have his legal residence out of the State, and yet be present in the State within the meaning of that provision.

During every absence of the debtor from the State, whether temporary or permanent, which is such that the creditor cannot, during the same, make legal service upon him, the statute of limitations will not run.

But during any return to or presence in the State of the debtor, whether permanent or temporary, with the knowledge of the creditor, or so open and notorious, and of such continuance as to amount to notice to him, and such that the creditor might, by ordinary diligence, have obtained service upon him, the statute of limitations will not run.

To a plea of discharge in insolvency in another State, the plaintiff replied that the defendant committed perjury in swearing to his schedule; and, also, that within a year before filing his petition, and being and knowing himself to be insolvent, paid, in part, borrowed money and preëxisting debts and liabilities, and that he procured the assent of creditors to his discharge by a pecuniary consideration, and made an assignment and transfer of property, in contemplation of insolvency in fraud of creditors, &c.;—upon demurrer,—*held*, that these replications were bad, because they did not specify time, place, persons, and circumstances, when, where, with whom, and under, and in connection with which the acts charged were committed and done.

While the general rule is, that where a demurrer is interposed, judgment must be rendered against the party whose pleading is first found defective,—this applies only to defects in substance, as all defects of

form, such as duplicity and surplusage, are waived and cured by pleading over.

It must also be a substantial defect in the line of pleadings in which the demurrer is interposed, and not in some other line of pleading which has resulted in an issue of fact, or some defect that might have appeared had the pleading been different.

ACTION, by John S. Lamprey against Ebenezer Peaslee and another, on a note dated Haverhill, Mass., July 7, 1857, payable two months after date to Joseph Fitts, of said Haverhill, who is still the plaintiff in interest. Writ dated Feb. 28, 1870. Lamprey pleaded,—first, the general issue ; second, a discharge under the insolvent laws of Massachusetts ; and third, the statute of limitations. The other pleadings were as follows, omitting the formal parts : The replications were filed Feb. 10, 1871. 1. The plaintiff says, at the time when the defendant made and delivered said note (July 7, 1857) to Fitts, the defendant was an inhabitant and citizen of Plaistow, N. H., and Fitts did not prove the debt against Lamprey's estate in insolvency, nor assent to his discharge, by virtue of said proceedings and said statute in said plea alleged. 2. Lamprey, before the filing of his petition in insolvency, made a fraudulent transfer of his property, with intent to defraud his creditors, contrary to section 87 of said laws. 3. Lamprey, in contemplation of becoming insolvent and of obtaining a discharge, made assignments, transfers, and conveyances of his property for the purpose of preferring some of his creditors, contrary to section 88. 4. Same as third, except it alleges the purpose to be " to prevent it from coming to his assignees." 5. Lamprey was absent from and residing out of the State from August 1, 1859, to the date of the writ, and, exclusive of said absence, did promise within six years.

Additional replications, filed Oct. 19, 1871 : 6. Lamprey wilfully swore falsely to the schedule of property, being a material fact, contrary to said act. 7. Lamprey, within one year before the filing of his petition, being insolvent, and having reasonable and sufficient cause to believe himself so, paid in part borrowed money, preëxisting debts and liabilities of his, contrary to said act. 8. Lamprey, or some person in his behalf, procured the assent of creditors to his discharge by a pecuniary consideration, contrary to said act. 9. Lamprey, in contemplation of becoming insolvent, and of obtaining his discharge, made a payment, pledge, and transfer of his property, to prevent its being distributed under the insolvent laws in payment of his debts.

Rejoinders to the first five replications : 1. The defendant says,— Fitts did prove said debt, and assent to his discharge. 2. After filing his petition, the defendant did not make a fraudulent transfer of his property with intent to defraud his creditors. 3. The defendant did not, in contemplation of becoming insolvent and obtaining a discharge, make assignments, transfers, and conveyances of his property, for the purpose of preferring some of his creditors, contrary to said act.

4. ...ne as third, except the purpose, " nor to prevent the same from coming to his assignee." 5. The defendant was not absent from and residing out of the State as alleged, and did not promise within six years, exclusive of said absence.

Demurrers to the last four replications :—To the sixth : the plaintiff has not set forth when, where, or before what tribunal, or in what proceedings, or in what particular, or as to what particular property or fact, the defendant swore falsely. To the seventh : the plaintiff does not state when, where, or to whom the defendant paid any borrowed money, preëxisting debts or liabilities, or the amount or the nature of the debts and liabilities. To the eighth : because it is ambiguous, in setting forth that Lamprey, or some person in his behalf, procured the assent, and does not state which did it, nor when, nor where, nor what person procured it, or that such person procured it by the assent, connivance, or inducement of Lamprey, nor what creditor's assent was procured, nor by what pecuniary consideration, nor that it was fraudulently procured. To the ninth : it does not state when, where, or to whom defendant made any payment, pledge, or transfer of his property for the purpose alleged, nor what kind nor what amount of property, nor that the pledge or transfer was fraudulent. To all : they set forth the charges in so general, informal, and uncertain a maner, that the defendant cannot know what particular facts the plaintiff will try to prove, and, therefore, the defendant cannot be prepared to disprove or answer them.

The plaintiff then suggested grounds of demurrer to the pleas as follows : 1. The pleas do not state where the defendant lived when he signed the note. 2. Nor that the debts from which Lamprey sought by said proceedings to be discharged were contracted while he was an inhabitant of Massachusetts. 3. The second plea states the effect of Fitts's signing the assent to the discharge to be an agreement that Lamprey might be discharged on said note, and a waiver of all objections thereto, when his assent had no such effect in law, nor any effect at all on the facts appearing. 4. The pleas are double : They allege,—1, that Fitts proved the debt; 2, that he agreed that Lamprey should be discharged ; 3, that the character of the debt was such that it was discharged without proof or assent.—5. The allegations of the second plea, after the words " by force of said proceedings, he was  *  *  *  wholly discharged from all debts proved against his estate," are surplusage, and incorrect in their statement of the effect of the discharge. 6. The allegations of the third plea, as to the effect of the assent and of the discharge, except on debts proved, are surplusage, and incorrect ; and so are the allegations that Fitts assented to the discharge. 7. The pleas are bad, because it appears from them that said note was one of a class of debts exempt from the jurisdiction of said court.

To support the plea of the statute of limitations, the defendant offered his own testimony, substantially as follows :

" Moved out of the State, May 4, 1858. Was at Plaistow most of the following summer, till November, 1858, making bricks. Boarded

there, and was there every night. Then, till about January, 1860, was in Georgia. From 1860 to 1863 was in and out of the State constantly. In no business then. In 1861, was in the State considerable. In 1862–63, more or less. In 1864–65, not much—occasionally. In 1864–68, about all my time, except nights, in Derry and Londonderry. Sometimes staid three or four nights at a time. In 1866–70, constantly in the State. Was in Plaistow one half the days in summer, and one third in winter. Hardly a day that I did not go to Plaistow. From 1868 to the present time was in the State one half my time. Was in the brick business at Plaistow; wood and timber at Derry, Windham, Londonderry, Manchester, Auburn, Hooksett, Hampstead, New Boston, and Dunbarton. Some of these towns may have been finished before 1868. When went to Plaistow was usually looking for wood, and would go to Newton, Danville, and Sandown, and often dine with my sister at Plaistow. If had time would come home to dinner. Had regular boarding places in Derry and Londonderry, from fall of 1863 to fall of 1866. My only business was then there. Boarded nearly a year in Windham. Was not home two days in a week, except Sundays. Lived most of the time about two and a half miles from Plaistow business, and one and a half from Plaistow. When I came home it was in the last train, and I left in the first train the next morning. There were months when I did not dine at home, except Sundays. All my business was in New Hampshire till March 4, 1869, since which time I have been at Georgetown, Mass., part of the time. The permanent places were in Derry, Londonderry, and Windham. In the other towns had gangs of men from fall of 1863–70. Since my discharge I have been in the coal, brick, timber, wood, grain, and potato business, and farming a little. My home with my family has been in Haverhill since 1860."

The plaintiff objected to this evidence as immaterial, and asked the court to rule that it did not support the plea.

The questions of law arising upon the foregoing case were reserved.

*C. U. Bell* and *Hatch,* for the plaintiff.

*Small,* for the defendant.

SARGENT, J. The plaintiff's suit is founded upon a note dated Haverhill, Mass., July 7, 1857; writ dated February 28, 1870. Said note was signed by the defendant, and made payable to Joseph Fitts, of said Haverhill, who is the plaintiff in interest. Lamprey pleaded,— first, the general issue; second, a discharge under the insolvent laws of Massachusetts; and third, the statute of limitations.

The general issue was joined. To the discharge in insolvency, the plaintiff first filed four replications; to all of which the defendant rejoined, tendering issues which were joined. No question arises here upon these pleas. The plaintiff afterwards filed four other replications

to this plea of discharge in insolvency, to each of which the defend-ant demurred ; and the questions thus raised are before us.

To the defendant's plea of the statute of limitations, the plaintiff has replied that the defendant was absent from and residing out of the State from August 1, 1859, to the date of the writ, and, exclusive of such absence, did promise within six years. The defendant rejoins that he was not absent from and residing out of the State as alleged, and did not promise within six years exclusive of such absence, and tenders this issue, which is joined.

One of the facts then directly in issue, which is to be found by the jury, is, whether, during the time specified, the defendant was absent from and residing out of the State. Upon this issue certain evidence was offered, to which the plaintiff objected as immaterial, and asked the court to exclude it as not supporting the plea. The defendant testi-fies that since 1860 his family has resided in Haverhill, Massachusetts, and his home has been there with his family. But the testimony also tends to show that he has been openly in business in this State much of the time since 1860, and that he has boarded and remained in the State most of the time for several years within that period.

Is that evidence material ? or, is a man's residence and presence, in contemplation of law, for all purposes only where his home is and where his family resides ? His legal residence for many purposes,— such as voting, paying certain taxes, and acquiring a settlement,—is of course ordinarily where his family resides. But to prevent the statute of limitations from running against a claim, the defendant must not only reside out of the State, but he must also be, in fact, absent from the State. If he reside in the State, then, though he may in fact be absent from it, yet service can be made by leaving copies or a summons at his place of abode; and so, if he reside out of the State, that is, have a legal residence somewhere else, he may notwithstanding be present in the State, so that personal service of process could be made upon him just as well as though he resided here. Hence the wording of the statute—Gen. Stats., ch. 202, sec. 8—and the requirement that, to prevent the statute of limitations from running, the defendant must be both absent from and residing out of the State. *Gilman* v. *Cutts*, 23 N. H. 376 ; S. C. 27 N. H. 348 ; *Kendrick* v. *Kimball*, 33 N. H. 482 ; *Ward* v. *Cole*, 32 N. H. 452, and S. C., as *Ward* v. *Howe*, 38 N. H. 35 ; *Brown* v. *Rollins*, 44 N. H. 446.

The replication is that the defendant was absent from and residing out of the State from August 1, 1859, to the date of the writ. The evi-dence tends to show that from November, 1858, to January 1, 1860, the defendant was in Georgia, so that no service could well be made on him here, especially since his legal residence is admitted to have been in Massachusetts ; and this covers a part of the time which is covered by the plea. That time of course must be excluded in the computation of the six years. " From 1860 to 1863 I was in and out of the State constantly. * * * From 1864 to 1868, about all my time except nights in Derry and Londonderry ; sometimes staid three or four

nights at a time. From 1866 to 1870, constantly in the State * * * hardly a day that I did not go to Plaistow. From 1868 to present time, was in the State one half my time. Was in the brick business at Plaistow; ·wood and timber at Derry, Windham, Londonderry, Manchester, Auburn, Hooksett, Hampstead, New Boston, and Dunbarton. * * * Had regular boarding places in Derry and Londonderry, from fall of 1863 to 1866. My only business was then there. Boarded nearly a year in Windham. Was not home two days in a week, except Sundays. * * * There were months when I did not dine at home, except Sundays. All my business was in New Hampshire till March 4, 1869. The permanent places were in Derry, Londonderry, and Windham. In the other towns had gangs of men from fall of 1863 to 1870."

We should conclude from this evidence, judging of it by the decision in *Brown* v. *Rollins*, 44 N. H. 446, where the substance of the former decisions is stated, that while it would not show any legal residence in the State, yet it might show that he was not absent from the State, but that he was, in fact, openly, publicly, and notoriously present for a large portion of the time; and not only that, but that he had property here, so that service might have been made, and the debt secured by attachment, just as well during nearly all of the time as though his residence had been in the State.

The substance of the authorities before cited, and others, such as *Shapley* v. *Felt*, 3 N. H. 121, *Little* v. *Blunt*, 16 Pick. 359, *Dwight* v. *Clark*, 7 Mass. 515, *Turner* v. *Shearer*, 6 Gray 427, *Byrne* v. *Crowninshield*, 1 Pick. 263, *Fowler* v. *Hunt*, 10 Johns. 464, and *Paine* v. *Drew*, 44 N. H. 306, and cases cited, as we understand them, is, that the absence or presence does not depend upon the legal residence or domicil of the party; that every absence from the State, whether temporary or otherwise, which is such that the creditor cannot during the same make legal service upon him, is to be deducted, and not reckoned as a part of the six years, in determining whether the statute is a bar. And it seems equally well settled, that any return to or presence in this State, whether permanent or temporary, with the plaintiff's knowledge, or so open and notorious and of such continuance as to amount to notice to the plaintiff, and such that the plaintiff might, by ordinary diligence, have obtained service upon him, will be reckoned as a part of the six years, at the expiration of which the statute of limitations becomes a bar to an action upon a claim.

If we are correct in our statement of the doctrine of the cases, this evidence was all competent and material, as bearing upon the issue joined upon the statute of limitations.

Were the demurrers to the plaintiff's replications well founded? The first one that is demurred to is the *sixth replication*, that " Lamprey wilfully swore falsely to the schedule of property, being a material fact, contrary to said act." *Demurrer*, that the " plaintiff has not set forth when, where, or before what tribunal, or in what proceedings, or in what particular, or as to what particular property or fact, the defendant

swore falsely." *Seventh replication.* " Lamprey, within one year before the filing of his petition, being insolvent, and having reasonable and sufficient cause to believe himself so, paid in part borrowed money, preëxisting debts and liabilities of his, contrary to said act." *Demurrer*, that the "plaintiff does not state when, where, or to whom the defendant paid any borrowed money, preëxisting debts or liabilities, or the amount or the nature of the debts and liabilities." *Eighth replication.* " Lamprey, or some person in his behalf, procured the assent of creditors to his discharge by a pecuniary consideration, contrary to said act." *Demurrer*, that " it is ambiguous, in setting forth that Lamprey, or some person in his behalf, procured the assent, and does not state · which did it, nor when, nor where, nor what person procured it, or that such person procured it by the assent, connivance, or inducement of Lamprey, nor what creditor's assent was procured, nor by what pecuniary consideration, nor that it was fraudulently procured." *Ninth replication.* " Lamprey, in contemplation of becoming insolvent, and of obtaining his discharge, made a payment, pledge, and transfer of his property to prevent its being distributed under the insolvent laws, in payment of his debts." *Demurrer*, that " it does not state when, where, or to whom the defendant made any payment, pledge, or transfer of his property for the purpose alleged, nor what kind nor what amount of property, nor that the pledge or transfer was fraudulent."

We think these demurrers are all well taken, for, though it is held that " a general plea that a deed was obtained by the plaintiff by fraud and misrepresentation" was sufficient (1 Ch. Pl. *537), and that where a release was pleaded the plaintiff might reply " that it was obtained by duress or fraud," and it was not considered necessary to state the particulars of the fraud (1 Ch. Pl. 582 ; *Hoitt* v. *Holcomb*, 23 N. H. 535 ; *Webb* v. *Steele*, 13 N. H. 230), because there the fraud is confined to a single fact—the signing of a single deed or a release, which is pleaded and specified ; yet it is also holden in New York, that where the defendant pleaded a discharge under the State insolvent law, and the plaintiff replied, setting forth all the grounds on which the discharge is made void by the act, *in the words of the act*, on demurrer the replication was held bad. And held, that the plaintiff must specify the particular fraud on which he means to rely to set aside the discharge. *Service* v. *Heermance*, 2 Johns. 96.

That case was very much like the present, as will be seen by examining the causes of demurrer to the replications, as there contained. There were some five replications, each charging perjury or fraud in general terms, as in this case, with demurrers that no specifications of time, place, persons, and circumstances are given, much as in this case. The court, in the opinion, say,—" The replication is clearly. bad, for it does not state wherein there was perjury or fraud in obtaining the discharge. The plaintiff ought to lay his finger upon the particular fact or fraud on which he means to rely ; otherwise the defendant can never know what he is to repel."

So in *Brereton* v. *Hull*, 1 Denio 75, which was a case under the

general bankrupt act, it was held that a replication to a plea of discharge, under the bankrupt act, must state what particular act of fraud the defendant has committed, also a description of the property alleged to have been transferred, as to kind and quality, and to whom it was conveyed, and, in case of unlawful preferences, what creditors were preferred, in order that the defendant may be fairly appraised of the proof he is to meet on the trial. And BRONSON, C. J., in assigning a reason for this rule, says,—" If the plaintiff knows that there were any unlawful preferences, in contemplation of bankruptcy, he can specify what in particular they were. If he has no such knowledge, this is then a mere fishing suit, which deserves no encouragement."

In *Willington* v. *Stearns*, 1 Pick. 500, a replication that the defendant swore falsely in taking the poor debtor's oath, without specifying in what he swore falsely, was held bad for uncertainty; and see *Bean* v. *Farnam*, 6 Pick. 269. In *Bank* v. *Robinson*, 2 N. H. 130, it was held that if to a general plea of performance the replication omits to assign any particular breach, it is bad on special demurrer.

But we have cases nearer still to the one before us in our own reports. In *Weld* v. *Locke*, 18 N. H. 141, the plea was a discharge in bankruptcy, under the act of 1841,—*replication*, that defendant, in obtaining his discharge, was guilty of fraud, and of the wilful concealment of his property and rights of property. *Rejoinder*, denying the fraud and wilful concealment; and the plaintiff *demurred*. The replication was held bad. The defect of duplicity was held to be cured and waived by pleading over; but the defect, that it did not set forth the particular fraud upon which the plaintiff relied to defeat the discharge, was held fatal. To be sure, the general bankrupt act of 1841 had a provision that the defendant must have notice in writing, and a specification of the fraud, before the trial. PARKER, C. J., in giving the opinion in that case, says,—" Where the proceedings are according to the course of the common law, the proper mode of giving that notice and specification is to aver the matter in the replication;" and he adds,—" It would seem that an averment of the specific matter, which is supposed to constitute the fraud, would be requisite without such a provision in the act." This was held to be a defect in substance.

The same question was decided in the same way in *Rand* v. *Upham*, 22 N. H. 39, where the replication was held bad for the same reason; and the same had also been held in the same way in *Lampson* v. *Eastman*, Grafton county, Dec. term, 1847, which is cited as authority in *Rand* v. *Upham*, 22 N. H. 40. These decisions were all made under the general bankrupt law, which required notice and specification of the fraud to be given to the defendant before trial; but this was only requiring what, as PARKER, C. J., intimates, would have been necessary, according to the ordinary rules of pleading at common law, without any such requirement in the act.

So in Massachusetts the precedents show that the same rule is applied. *Sullivan* v. *Hunt*, 5 Allen 124. The suit was upon a promissory note. Plea, discharge in insolvency. Replication, that the

discharge was invalid because the defendant, within six months before the time of filing his petition, &c., being insolvent, and having reasonable cause to believe himself so, conveyed to one Franklin Pool, in payment or part payment of a preëxisting debt, a wagon of the value of about forty dollars: thus showing a specification of the particular property and its value, which was thus fraudulently conveyed, and also of the name of the person to whom it was conveyed.

Upon the weight of these authorities, we think the demurrers to the four last replications must be sustained; for they all stand upon the same ground, though the replications are different,—the first alleging false swearing, and the others fraudulent conduct, &c.

But though the plaintiff's replications are bad, and the demurrers well taken, yet the plaintiff claims that we must go further, and look for other faults in the pleadings, and render judgment against the party making the first mistake: and this is the rule unquestionably, with some limitations. It must be a defect *in substance,* as all defects of form merely are waived and cured by pleading over. 1 Ch. Pl. 668; *Morse* v. *Eaton,* 23 N. H. 415; *Berry* v. *Osborn,* 28 N. H. 279; *Claggett* v. *Simes,* 31 N. H. 29. It must also be a defect in the direct line of the pleadings, as they are constituted, and not a defect which might have arisen had the pleadings, or any of them, been different from what they are. *Davies* v. *Penton,* 6 Barn. & Cress. 216.

There are two different pleas of the discharge in insolvency, differing only in form, and both referring to the same proceedings and the same discharge. We have examined these pleas, and find that the second one alleges distinctly, and the first one sufficiently, we think, though not so plainly as the other, that this debt here in suit *was proved* before the insolvent court in Massachusetts. The plaintiff has not demurred to these pleas, or either of them, for any reason; but, in his first replication to these pleas, has stated that at the time when the defendant made said note, &c., he was an inhabitant of Plaistow, N. H., and that "*Fitts did not prove the debt against Lamprey's estate in insolvency*, nor assent to his discharge, by virtue of said proceedings and said statute in said plea alleged." The defendant rejoins that "Fitts did prove said debt against Lamprey's estate in insolvency, and that he did assent to his discharge," &c.; and this is the issue joined.

In the second, third, and fourth replications, it is alleged that Lamprey, before his petition in insolvency, made a fraudulent transfer of his property, and fraudulently preferred some of his creditors, &c., either of which acts would make the discharge void. · The rejoinders to these replications deny said fraudulent transfers and preferences of creditors, and issues are joined on each. Upon examination, we find that these replications,—the second, third, and fourth,—would all have been bad upon demurrer, for the same reasons that the sixth, seventh, eighth, and ninth have been held to be defective. But no questions are raised here in relation to them.

The claim in suit is a note dated Haverhill, Mass., July 7, 1857, payable to Joseph Fitts or order, and signed by the defendant. The

pleas allege that, at the date of the note, long before, and ever since, said Fitts was, and is, an inhabitant and resident of said Haverhill, Mass. ; and that he always has been, and still is, the owner and holder of the note ; that said note was executed in Massachusetts, and to be paid and performed there ; that the plaintiff, on the 9th day of August, 1858, became, ever since has been, and now is, a citizen and resident of said Haverhill ; and the pleas set out the statute of insolvency of Massachusetts, and that the defendant filed his petition in insolvency in 1863 ; that the plaintiff proved his claim against the defendant's estate, in insolvency, and assented to the defendant's discharge, and that the defendant obtained his discharge in insolvency, July, 1864. As to the causes of demurrer which the plaintiff suggests, all these facts are admitted ; and no exception is taken that the statute is not properly set out, or to the regularity of the proceedings.    But the plaintiff suggests as grounds of demurrer :   1. The pleas do not state where the defendant lived when the note was signed.   2. Nor that the debts from which Lamprey sought to be discharged were contracted while he was an inhabitant of Massachusetts.

Under the pleas, these two grounds of objection would seem to be entirely immaterial.    Section 17 of the act requires that the insolvent should owe some debts contracted while he was an inhabitant of Massachusetts.    But the statute provides for the proof of claims, regardless of the place where they were contracted, or of the residence of the insolvent when contracted.    Sections 25 and 76 provide for the absolute discharge of the debtor :   1. From all debts proved against his estate.   2. From all debts provable under this chapter, founded on any contract made by him since July 31, 1838, and while an inhabitant of Massachusetts, if made in Massachusetts, to be performed within the same, &c. ; and we understand that by all the statutes of Massachusetts—that of 1838, and that of 1855, and by the General Statutes (1860)—all debts not specially excepted (and this does not appear to be excepted), which were duly proved against the insolvent in the course of his insolvency proceedings, were absolutely discharged by the force of the insolvent's discharge.    And we can see no reason why it should not be so, as the party, by voluntarily appearing in court and proving his debt, becomes subject to the jurisdiction of the court, and ought to be bound by its decrees.

The third, fourth, fifth, and sixth causes of demurrer suggested by the plaintiff are not now open to him as he stands in the case.    The fact that pleas are double, or that portions of them are surplusage, are held not to be matters of substance, and hence not open after they are answered by other pleas.    The point that the plea was double is referred to in *Weld* v. *Locke*, 18 N. H., *supra*, and it was held that this defect was cured by pleading over, it being merely a matter of form ; and the same rule is stated in all the authorities.   1 Ch. Pl. 686, &c.

The plea of a discharge in insolvency necessarily includes many facts, as the discharge is intended to cover many classes of claims ; and many claims, in every case, may be proved, that would be discharged

under some one of the provisions of the law if they had not been proved. This is one of those cases alluded to in 1 Ch. Pl. 227, where it is said that "it is important to remember that several distinct facts or allegations, however numerous, may be comprised in the same plea or other pleading, without amounting to the fault of duplicity, if one fact, or some of the facts, be but dependent upon, or be mere inducement or introduction to the others, or if the different facts form together but one connected proportion or entire matter or point." "If a man pleads two things, where he is compellable to show both, this does not make his plea double." Bac. Abr., Pleading, K. 2. Duplicity in a plea consists in alleging two or more distinct grounds of defence, where one of them would be as effectual in law as all of them. Gould's Pleading 419. If several facts are necessary to constitute one single and complete answer to the action, the plea is not double. *Tebbets* v. *Tilton*, 24 N. H. 120, 123, and cases cited; *Galusha* v. *Cobleigh*, 13 N. H. 83; *Watriss* v. *Pierce*, 36 N. H. 232; *Russell* v. *Rogers*, 15 Wend. 353. It is doubtful whether the plea in this case is double, according to the above principles; but even if double, or if much was included in it that might be struck out as surplusage, yet this would not make the plea bad after it had been answered to.

The seventh ground of objection suggested is immaterial, for, as we have seen, the pleas allege that Fitts proved his claim in insolvency, which gave the court jurisdiction; and it is of no consequence whether it belonged to a class of debts which would have been otherwise exempt, or not.

In all the lines of pleading which have resulted in issues of fact, no question is before us. In this line of pleading, in which the demurrer is interposed, there is the declaration, plea of discharge in insolvency, replications that this discharge is void because it was obtained by fraud and false swearing in matters which, by the provisions of the law itself, would make the discharge void, and to these replications a demurrer. We find the replications bad; and the only question now is, whether any of the previous pleadings are so in substance. The declaration is good, and the plea, as we have seen, alleges enough to make it a good discharge in insolvency, so far as this plaintiff's claim is concerned.

The result is, that the evidence offered upon the issue of the statute of limitations is held admissible and material, and the defendant's demurrer to the plaintiff's replications is sustained.

*Case discharged.*